Chief Justice Robertson
delivered the Opinion of the Court—
Judge Ewing was not present when the cause was argued, and for that, and other reasons, took no part in the decision.
John and James Keel, having paid a debt as the sureties of one John B. Stephens, a non-resident of this State, filed a bill in Chancery against him,- and against Robert W. Ogden and James Peter, alleging, among other things, that Ogden, as the agent of Stephens, had funds in his hands more than sufficient for re-imbursing *104 the amount which they had paid for Stephens; and that Peter was indebted to Ogden, as the agent of Stephens; and therefore praying for a decree against Stephens and Ogden, and for an injunction restraining “in the hands “ of said Ogden and Peter, the money or tobacco or “ other effects they have, or shall have, in their hands, “belonging to said Stephens, or so much thereof as “ shall be sufficient to pay the debt on said Stephens, “ and the costs &c. ”
At the February term, 1821, the Circuit Court made the following order: — “Upon motion of John and James “ Keel, on bill sworn to and filed, an injunction is “ granted them, of four hundred and thirty dollars, ac- “ cording to the prayer of their bill, upon their giving “ bond, &c.
On the 5th of March, 1821, an injunction bond was executed, to Ogden, with the following condition: — “ That “whereas the said John and James Keel have obtained “ a restraining order against James Peter, from paying “ over to Robert W. Ogden the sum of four hundred “ and thirty dolíais, which is alleged to be in his “hands, as owing to said Ogden: now, if the said Keels “ and Sharp — (their surety,) — or either of them, shall' “ well and truly pay unto said Ogden, the said sum of “four hundred and thirty dollars, in case said Ogden shall “be unable to collect the same of said James Peter, by “ reason of the delay created by said restraining order, “ and in the event that the said Keels shall be cast in “ said suit, shall also pay all damages occasioned by the “ suspension aforesaid, then this obligation to be void, “ else to remain in full force and virtue. ”
And the following indorsement was made on the subpoena which was issued: — “ The defendant James Pe- “ ter is hereby restrained from paying over the sum “of four hundred and thirty dollars, to the defend- “ ant Robert W. Ogden, which is alleged to be in his “ hands, as owing to said Ogden. ”
On the 11th of April, 1821, Ogden sued Peter and W, L. Fowke, on the following obligation:—
“ $1038 84. On or before the 1st day of February, we or either of us promise to pay, or cause to be paid, *105 “unto Robert W. Ogden, or order, the sum of one “thousand and thirty eight dollai’s eighty four cents, “ lawful money, which may be discharged with tobacco; “ for value received of him, as witness our hands and “seals, this 13th day of May, 1820.” — Signed “ James “ Peter, W. L. Fowke.”
PIeas*
The complainant bm“havfn^obtamed a restrain-bond,1 a^cfndltion of which is, in effect, that if the debt shall bo lost in consequence of the order, tho obligors shall “pay the said $430:” the recovery upon the bond, is not limited to the bare sum so named in the condition; but may be for the amount of the debt enjoined, or so much as is lost, including principal and interest.
And having obtained a judgment, had sundry executions issued; in virtue of which only about three hundred dollars were ever made.
The Court having decreed in favor of the Keels, and against Stephens and Ogden, three hundred and eighty-five dollars, with costs, and interest for several years, and dismissed their bill as to Peter — Ogden, in August, 1829, brought an action of debt on the injunction bond, and assigned the following breach: — “that he was, and “ has been, and yet is, unable to collect the said sum “ of four hundred and thirty dollars, or any part thereof, “ of said James Peter, by reason of the delay created “ by the said restraining order mentioned in the condi- “ tion aforesaid.”
The Keels pleaded: first — that Peter never owed Ogden such a debt as that described in the restraining order; — second, that Ogden was not “ unable” to collect his debt from Peter, “ by reason of the delay created by the restraining order.” Third — that Peter was wholly insolvent when the restraining order was served on him; and, fourth — that “ Ogden was not hindered and “ delayed in the collection of said debt from Peter, by “ reason of the said restraining order.”
The jury sworn to try the issues formed on those pleas, returned a verdict for seven hundred and fifty dollars, in damages; upon which the court, having overruled a motion for a new trial, rendered judgment; to reverse which this appeal is prosecuted.
The condition of the bond, though anomulous, and not altogether unambiguous, is not,without an unauthorized transposition, susceptible of any other than one interpretation; and that is, that if the Keels failed in their suit ’ *106 they should have been liable to Ogden, for all damages which he might have sustained in consequence of the injunction and of the prosecution of the suit; but that, even 31;1(;060^6^ still, if Peter, in the mean time, should become unable to pay the debt which was enjoined, they would be accountable for it, or for four hundred and thirty dollars. Without transposing the copulative (and,) so as to place it after “ said suit,” instead of “said restraining order,” the condition literally imports that whether they ultimately succeeded in their suit or not, they would pay the four hundred and thirty dollars, or account for it, if, in consequence of the injunction, Ogden should be unable to collect it from Peter'; for in other words, that sum should be lost by Ogden.
The pniscipal question.
The counsel;'for the appellants contends, that the same process o'f interpretation will restrict their liability to the sum of four hundred and thirty dollars. But, we think otherwise. A debt of four hundred and thirty dollars was enjoined; and they undertook on a specified contingency, to pay, not four hundred and thirty dollars, but “ the said sum of four hundred and thirty dollars:” that is, the debt which they had enjoined. If that debt should be lost in consequence of their injunction, they were to be accountable for it; and if any part of it should be lost, they were, pro tanto, to be responsible. And consequently, if the debt of four hundred and thirty dollars carried interest, the aggregate amount was to have been guarantied.
If then any debt was enjoined, and was due, when it was enjoined, and carried interest, and if that debt was lost in consequence of the injunction, the judgment should not be deemed excessive in amount.
But the more important and radical question is whether -the record shows that the appellee was entitled to any judgment; or whether, if it does, the judgment is er-i’oneous, in consequence of any error in the progress of the trial.
As the appellants succeeded against the appellee in their suit in Chancery, they cannot be liable on their bond, unless the debt or some part of the debt which *107 they enjoined, was lost in consequence of their injunction; and, even in that event, their liability cannot be extended beyond the actual loss so sustained by the appellee.
^t^latalfflost his debt in consequence of defendant ’s restraining order,— a plea that tho debtor was insolvent when tho order was issued, is a sufficient answer.
A plea that a debtor was in-solventwhenpro cess upon an at.chment bill, as served on him, and so the ".ebt not lost by e injunction— esents an immaterial issue— it is service on the credit- or, that prevents the collection of debt, and then the debtor may have been good.
Where a defendant pleads facts which he might be estopped from pleading, if the plaintiff takes issue on the pleas, he waives the estoppel.
An attachment and^may^be enjoined ^not to f^ds to the com plainant’s debt- or, b; injunction panted “according to the prayer of the hill;” the injunction bond, instead of pursuing the order, complainants have obtained a restraining order against P from paying over to O, the sum fyc; suit on the bond; breach assigned charges that O lost the debt which P owed him, in consequence of‘the injunction; plea, thatO was not'restrained from collecting the demand from P: an issue on this plea, waives the estoppel which the recital of the bond affords, and the plea presents a good defence to the action.
The declaration, though very imperfect, may be deemed substantially good, especially after verdict on issues of fact.
And the pleas too, excepting perhaps the third, are substantially good. The third plea is not insufficient in the allegation that Peter was insolvent, for “insolvent,” according to both its popular and philosophical import, means unable to pay, and if Peter was unable to pay, Ogden could not have been prejudiced b^the injunction. But perhaps the plea is defe only that Peter was insolvent when der was served on “ Aim;” because,}] nevertheless, may not have been insolvent when t ed on Ogden; and therefore, on this j on the third plea may be deemed im! will not materially change the character-^e^-iyo u or have any essential influence on the case^rfor the second plea virtually embraces the same matter as that which the third would have contained had it been unexceptionably pleaded.
Were it conceded that the appellants might have been estopped by the recitals in their bond, from denying that the appellee had any such debt as ■ that described in the bond and supposed to be enjoined; yet, as the estoppel was waived by taking issue on the plea, that issue is good, and material.
The note from Peter and Fowke, for one thousand thirty-eight dollars and eighty-four cents, could not, per se, be deemed a debt from Peter to Ogden for four hundred and thirty dollars. But it is evident, from the facts exhibited, that the debt intended to be enjoined, was i • ni -! J.-/Z j a part of that note; and, that not being clearly id.entme.ct *108 by the order, the bond, the prayer in the bill, or the endorsement on the subpoena, there was room for doubt on that ground alone, whether, as to that note, there was any actual or binding injunction which could have prevented Ogden from collecting the whole amount from either Peter or Fowke. But however this may be, we are of the opinion, that the jury were not authorized to find the issue on the fourth plea, against the appellants. Here again the estoppel was waived by the issue. And the fact being thus open to enquiry, the prayer in the bill, and the order made thereon for an injunction, show that, in fact, there was no such order as that recited in the bond. The object of the bill was, to obtain a decree against Ogden, for funds which he held for Stephens; and therefore the appellants prayed, not that Peter should be enjoined from paying Ogden, but (as we understand) that both Ogden and Peter should be restrained from paying to Stephens, any thing which they or either of them owed him. And therefore, as the Court ordered an injunction u according to the prayer,” there was no order for enjoining Peter from paying to Ogden four hundred and thirty dollars, which he owed to him, and not to Stephens. Hence, as no estoppel was relied on, and therefore proof of the foregoing facts was admissible, and more especially, as it was introduced by the appellee himself, it seems that the fourth plea was sustained, and that the appellee was not, by the restraining order, enjoined or prevented from collecting his debt from Peter and Fowke.
Where there is $1000 due to a party, and he is enjoined by order on the bill of an attaching creditor, from collecting 400 dollars, and the condition ofthe injunction bond is, in effect, that if he loses his debt in consequence of the injunction, the obligees shall pay the damage: unless it appears that the credit- or collected, or might have collected the $600, and, but for the restraining order, could have collected the f400, or some part of it, also, — there is no breach of the condition— nor cause of action on the bond.
*108 But if it had sufficiently appeared, that four hundred and thirty dollars of the debt due from Peter and Fowke had been in fact enjoined, still the judgment could not be sustained. In that state of case, the only question would be, whether the amount so enjoined, or any part of it, had been lost in consequence of the restraining order. To that question the efforts of the parties seems to have been chiefly directed. And during the progress of the trial, the court below erred in giving and in refusing to give instructions.
After proof had been introduced, tending to show that Peter was insolvent at the date of the restrain» *109 ing order; and on the other side, there had been evidence tending to prove that he then, though greatly indebted, had visible estate of the value of about six hundred dollars; and after there had been proof also, that an offer to pay less than three hundred dollars in horses at one time, and about five hundred dollars in tobacco, at another, after the date of the restraining order, had been rejected, on the alleged ground that the order prohibited any such payment — various instructions were given and refused to be given, the most of which it is unnecessary to notice here. But in more than one instruction the Court seemed to be of the opinion, that, even if the appellee had not been delayed or obstructed in the prosecution of his suit on the note, by the restraining order- -and though Peter was insolvent or unable to pay, before the judgment was obtained, nevertheless, the appellee had a right to recover; provided the jury should believe that, had there been no restraining order, four hundred and thirty dollars would have been voluntarily paid; and that opinion was clearly evinced in giving and withholding instructions. And here we think the Circuit Judge erred.
First. If the appellee prosecuted his suit on the note, just as he would have done if there had been no restraining order, he certainly could have no right to recover in this case; because, as to about six hundred dollars of his debt, there was no pretence for supposing that there was any injunction. And, though he brought his suit on the note, within about one month after the date of the restraining order, he was not able to collect more than half of that sum. Of course, there is no ground for presuming that if there had been no restraining order, he could have collected the whole amount which was not enjoined, and any part of the four hundred and thirty dollars, which' may have appeared to be enjoined; and as to the suggested possible inference respecting a probable willingness and ability to have voluntarily paid any part of the four hundred and thirty dollars, if there had been no injunction, it is enough to observe, that there being no evidence which could authorize any such deduction, that qualification or interpolation was altogether abstract and delusive.
*110 Second. If either Peter or Fowke had been willing and able to pay as much as four hundred and thirty dollars, and even if they were induced by the injunction not to do so, still the appellee could not have been prejudiced, unless they had been prevented by the injunction from paying the whole sum of one thousand thirty eight dollars and eighty four cents, or so much of it as would have left less than four hundred and thirty dollars due. But the Circuit Judge seemed to think, that if Peter and Fowke were induced by the injunction to forbear paying four hundred and thirty dollars, or even any less sum, the appellee had a right to recover the full amount, or pro tanto. This was certainly erroneous. For the appellee could not have been prejudiced by the injunction, unless he had been able to collect the whole amount which was not enjoined, and might also, if there had been no injunction, have collected the amount which was enjoined, or some part of it. Piad he collected, or been able to collect, even six hundred dollars, and no more, surely he could not have been injured by the injunction, because a larger sum than six hundred dollars remained unenjoined; and the injunction therefore could not have prevented him from collecting that which, had there been no injunction, he could not have coerced; and, of course, no damage could have resulted to him from the injunction.
Vfherefore, the judgment must be reversed, and the, cause remanded for a new trial.